**Charles Eugene MARTINEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–03–00052–CR.**

Court of Appeals of Texas, Waco.

Feb. 15, 2006.

Discretionary Review Refused June 7, 2006.

**292**

Stanley G. Schneider, Schneider & McKinney, PC, Houston, for appellant.

Jerilynn K. Yenne, Brazoria County Crim. Dist. Atty., Angleton, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

### OPINION ON REMAND

BILL VANCE, Justice.

This case is on remand from the Court of Criminal Appeals. In the initial appeal, a majority of this court held that the trial court did not err in admitting hearsay testimony (complainant's outcry) by the complainant's mother. *Martinez v. State,* No. 10–03–00052–CR, 2004 WL 2066760 (Tex.App.-Waco Sept. 15, 2004) (not designated for publication). The Court of Criminal Appeals reversed, holding that the majority was mistaken in its conclusion that the testimony was admissible under article 38.07. *Martinez v. State,* 178 S.W.3d 806 (Tex.Crim.App.2005). Thus, the case was remanded to us "to determine whether the admission of the outcry statement was harmless error." *Id.*

Charles Martinez, who ran Mustang Christian Ranch for troubled children, was charged with four counts of indecency with a child and one count of injury to a child, involving two different minors: A.R. and B.F. The jury acquitted him of the counts related to B.F. but convicted him of all three counts relating to A.R. Punishment was assessed at 10 years in prison for each offense, to be served concurrently, and a fine of $15,000 ($5,000 for each offense).

A.R.'s mother, Teresa, testified about what A.R. had told her about the offenses, the admission of which has been determined to be erroneous. *See id.* Our task is to determine whether this non-constitutional error had more than a slight

influence on the verdict. TEX.R.APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Fowler v. State*, 958 S.W.2d 853 (Tex.App.Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999).

 The Court of Criminal Appeals has recently restated the review process: In assessing the likelihood that the jury's decision was adversely affected by an error, an appellate court should consider everything in the record, including (1) any testimony or physical evidence admitted for the jury's consideration, (2) the nature of the evidence supporting the verdict, (3) the character of the error and (4) how it might be considered in connection with other evidence in the case and may also consider (1) the jury instructions, (2) the State's theory, (3) any defensive theories, (4) closing arguments, (5) voir dire, and (6) whether the State emphasized the error. *Haley v. State*, 173 S.W.3d 510, 518–19 (Tex.Crim.App.2005).

After examining the record of Martinez's trial as a whole, we do not have fair assurance that the error in question did not have a substantial and injurious effect or influence in determining the jury's verdict that he is guilty of the charges involving A.R. *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App.2004) (an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict). As the Court noted in *Garcia:*

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but a slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

*Id.* at 927 n. 9 (quoting from *Kotteakos v. U.S.*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

In making our evaluation in accordance with *Haley*, two interrelated considerations stand out: (1) absent the improperly admitted outcry evidence, the only direct evidence supporting the guilty verdict was A.R.'s testimony, thereby making her credibility essential to a conviction (the nature of the evidence supporting the verdict, character of the error, and how it might be considered in connection with other evidence); and (2) on five occasions during Teresa's testimony the trial judge instructed the jury about (a) its role as the judge of the credibility of testimony, (b) its right to consider what A.R. told Teresa and "give it whatever weight, if any, you choose," (c) its job to judge the credibility of the evidence, as related to hearsay, (d) outcry statements "in a molestation allegation" and the jury's "judge of the credibility of that," and (e) the review of witness statements to aid in cross-examination "to aid you, if it does aid you, in judging the credibility of the witnesses" (instructions to the jury).[1]

---

1. Another consideration: the jury found Martinez not guilty of the counts charging conduct against B.F., who testified for the State. Two witnesses testified in support of the State's theory about the incident alleged in the count involving injury to a child, and two witnesses said they did not see any indication that it happened. The jury obviously rejected B.F.'s testimony as not credible, leading us to believe that Teresa's testimony was a substantial factor in the jury's determination that A.R. was credible.

The State's theory of the case was that A.R. was telling the truth and the charges were true; the defense theory was that A.R. was not credible, given the circumstances surrounding how she came to be at Mustang Christian Ranch and her version of the events. Although neither party stressed Teresa's testimony in argument, the State suggested that A.R.'s statements to her mother were made only after she was told that she would not have to return to the Ranch.

Having "grave doubts" about whether the error affected the outcome in this case, we hold that the erroneous admission of Teresa's testimony was harmful. *Fowler*, 958 S.W.2d at 865. We reverse the judgment of conviction and remand the cause to the trial court for a new trial.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

A majority of this Court finds that Charles Eugene Martinez was harmed by the erroneous admission of outcry witness testimony. I disagree. Therefore, I find it necessary to conduct my own harm analysis.

Martinez was charged in a five count indictment with the felony offenses of indecency with a child younger than 17 years of age and injury to a child younger than 15 years of age. Counts I–III alleged that Martinez engaged in sexual contact with AR, a child younger than 17 years of age. Count IV alleged that Martinez engaged in sexual contact with BF, a child younger than 17 years of age. Count V alleged that Martinez caused bodily injury to BF, a child younger than 15 years of age, by hitting BF in the face with his hand. A jury acquitted Martinez of the counts related to BF and convicted him of all three counts relating to AR. The jury assessed punishment at 10 years in prison and a fine of $5,000 for each offense. The trial court ordered the prison time served concurrently but ordered that the total fines, in the amount of $15,000.00, be paid.

On appeal to this Court, the conviction and sentence were affirmed in a memorandum opinion rendered September 15, 2004. *Martinez v. State*, No. 10–03–00052–CR, 2004 WL 2066760 (Tex.App.-Waco Sept. 15, 2004) (not designated for publication). The decision of this Court of Appeals was reversed on November 2, 2005. *Martinez v. State*, 178 S.W.3d 806 (2005).

The Court of Criminal Appeals held that the trial court erroneously admitted hearsay testimony by the complainant's mother as a victim outcry statement and remanded this case to this Court to conduct a harm analysis. This error is not constitutional in nature and is, therefore, subject to the analysis for harm provided by Tex. R.App. P. 44.2(b). The reviewing court must decide if the admission of the complained-of testimony "had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 270 (Tex.Crim.App.1997). Rule 44.2(b) requires that non-constitutional error be disregarded unless it affects "substantial rights."

In discussing how to conduct a harm analysis, the Court of Criminal Appeals has stated that

[S]ubstantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the

character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable. We have also recognized that whether the State emphasized the error can be a factor.

*Motilla v. State,* 78 S.W.3d 352, 355–356 (Tex.Crim.App.2002) (footnotes omitted). *See also Haley v. State,* 173 S.W.3d 510, 518–519 (Tex.Crim.App.2005).

AR's mother was the witness immediately preceding AR's testimony. She testified about taking her daughter to Martinez's home and the surrounding circumstances. She also testified about the mood and behavior of AR immediately before and then upon her return from staying overnight at Martinez's. This testimony was introduced as background testimony and gave context to both the outcry testimony, about which Martinez complains, and the subsequent testimony given by AR without objection.

Because AR was older than 12, the outcry testimony given by AR's mother was not admissible. AR's mother testified about events that occurred on two different, but successive, days while AR was at Martinez's home.

The primary testimony relating to the first incident about which Martinez complains comprises a mere eight lines of testimony. The full text of that testimony is as follows:

A. She had said that he had come in while she was sleeping. I believe that was Saturday night. And had started running his hand up her blouse. She said she started coughing to try to wake somebody or try to get him to move. And that he finally did later on get up and go out of the room. When I asked her if she knew it was him, she told me that there was a mirror that was standing there, and as he got up, she saw his reflection off of it.

The testimony regarding the other two charges, though broken up by three questions, comprised only 13 lines. That testimony, without the questions, is as follows:

A. She told me that at that point she was asked to sit on the bed. Mr. Martinez sat on the bed with her, and asked her something to the effect of, would you let a boy do this, and he put his hand underneath her blouse.

\* \* \*

A. And then she said that he got on top of her, or forced her to get on top of him. And she said that the whole time she was wanting to get up, but she couldn't. He was holding her down and rubbing up against her.

\* \* \*

A. She just said that he was trying to put his hand—he said, would you let a boy do this, and he got his hand in her blouse. He said, would you let a boy do this, and he was rubbing his hand up and down her leg. And that's when, I guess, he got her on top of him.

This testimony is not as detailed or as specific as the testimony given by the victim, AR, the very next witness at trial. AR's testimony does not indicate any uncertainty, hesitation, or qualification about what events transpired between Martinez and AR.

To properly evaluate whether Martinez was harmed, I have considered everything in the record in light of the factors discussed in *Motilla* and reiterated in *Haley.*

The testimony of AR, which was the only other evidence regarding Martinez's

guilt on these three counts, was clear, free from material contradiction, and is not controverted. It is clear from the record that this witness was fully capable of giving credible testimony free of the concerns usually present in connection with the testimony of children.

The testimony given by AR's mother is not the type testimony that would appear to the jury as more credible than AR's testimony. Because of its summary nature and brief duration, it is unlikely that the jury placed any significance on it.

The prosecution did nothing to emphasize the inadmissible testimony. The testimony of AR's mother was barely mentioned at all in arguments by either the State or Martinez. It was obviously immaterial to both.

After careful consideration of the entire record, I would hold that the error in admitting the outcry testimony did not affect Martinez's substantial rights and, therefore, was harmless.

The judgment of the trial court should be affirmed. Because the majority reverses the judgment, I dissent.